SAWTELL et al. v. FESER et al. (No. 8182.)

(Court of Civil Appeals of Texas. Galveston. Dec. 17, 1921. Rehearing Denied Dec. 22, 1921.)

1. Beneficial associations ⬅14 — Injunction against officers not granted before appeal has been taken under by-laws.

Officers of local lodge of fraternal order *held* not entitled to an injunction restraining executive officer of entire organization from removing them from office, under by-law authorizing him to remove officers of local lodges when satisfied they are not performing their duties, on grounds that removal is without cause, that a property right is involved, and that such by-law is unreasonable and therefore void, where the right, under the by-laws, to appeal from order of removal to executive committee, the board of trustees, and the Supreme Commander, has not first been exhausted.

2. Beneficial associations ⬅12 — Rights of members must be settled in accordance with rules of association.

The rights of all members of fraternal orders must be settled in accordance with the rules and laws of the association which the members have adopted, or to which they have agreed by becoming members, unless such rules or laws violate the laws of the land, or are inadequate to protect the member or his property or personal rights, and resort cannot be had to the courts until the remedy provided by the laws of the association has been exhausted.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by P. J. H. Feser and others against J. B. Sawtell and another. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

Fulbright & Crooker, of Houston, and Weatherby & Rogers, of Waco, for appellants.

Hunt & Teagle, of Houston, for appellees.

GRAVES, J. Sawtell' and Harvey were, respectively, Great Commander and Great Record Keeper for Texas of the Maccabees, a fraternal order incorporated in Michigan but having lodges in various parts of the United States known as "tents"; one of these, "Tent No. 28," of which A. L. Haag and Sol Z. Gordon were commander and record keeper, respectively, being located in the city of Houston.

Pursuant to the laws of the order Sawtell, in his official capacity, on June 9, 1921, first directed Gordon, as record keeper of Houston Tent No. 28 to deliver up to a named appointee all books and records in his possession for the purpose of being audited; Gordon, with the approval of Haag, refused to comply, and Sawtell then on June 22, 1921, in accordance with sections 119 and 174 of the laws issued his orders removing both Gordon and Haag from their positions as such officers of the Houston tent and again directed the turning over of the records; these second orders were likewise disregarded by the subordinate officers, who subsequently, on July 6, 1921, the day the controlling body of the Great Camp of the state of Texas— to which they had the right of appeal from Sawtell's edicts—met in the city of Houston to hear any complaint the two deposed officers might desire to make, obtained from the Eighteenth district court a temporary restraining order directing Sawtell and Harvey, until further orders of the court, not to interfere with the officers and members of such Tent No. 28, and not to prevent them from paying their dues or otherwise maintaining their good standing in the order.

After a hearing on the matter, the same court on July 13, 1921, perpetuated the restraining order in the following injunction:

"On this the 13th day of July, 1921, came on to be heard the above styled and numbered cause in chambers, on the plaintiffs' petition for an injunction restraining the defendants J. B. Sawtell and L. O. Harvey from attempting to remove from their respective offices in Houston Tent No. 28 of the Maccabees the plaintiffs Sol Z. Gordon and A. L. Haag, under and by virtue of the power vested in said J. B. Sawtell by section No. 119 and section No. 174 of the laws of the Maccabees; and the court, having heard the evidence and argument, is of

the opinion that the plaintiffs are entitled to the relief prayed for, and that the order heretofore made by said J. B. Sawtell, removing said officers, be in all things annulled and held void, and that said J. B. Sawtell and L. O. Harvey be and they are hereby restrained and enjoined from proceeding further under said article No. 119, and that the temporary restraining order heretofore made in this cause on July 6, 1921, be and the same is hereby perpetuated.

"It is further ordered and decreed that this injunction shall not be so construed as to enjoin the said J. B. Sawtell and said L. O. Harvey from proceeding against the plaintiffs herein in accordance with the laws of the Maccabees other than under said section No. 119."

[1] From the judgment Sawtell and Harvey appeal to this court, challenging the authority of the trial court, under the facts appearing, to so interfere with the exercise by them of the prerogatives vested in them by the laws of their order. Their main contention here is that a resort to the courts was not available to the appellees, that is, Gordon and Haag and other members of the local tent who had joined with them in suing out the injunction, for the reason that they had not first exhausted the remedies provided within the society itself.

With this position we agree. Under the undisputed facts, the applicants for the writ accorded below made no pretense of having first pursued the right of appeal given them by the laws of the order, but ignored that entirely, and, as above stated on the very day the first appellate body of the organization met in Houston for the purpose of hearing any appeal in the matter they might desire to make, went directly into the civil courts. They pleaded that the two local officers concerned were capable and competent, that there was no complaint on the part of the local body as to their services, and that in so depriving them of their offices the Great Camp Commander and Record Keeper, appellants Sawtell and Harvey, were acting from animosity, without just cause, arbitrarily and without giving them the benefit of any notice or of a trial; further, that appellee Gordon was receiving an income from his office in excess of $500 per year, of which the enforcement of the removal order would arbitrarily and without just cause deprive him; and, finally, that the by-law on which Sawtell's action had been predicated was unreasonable and void; their theory, as reflected by this pleading below, and as repeated by counter propositions briefed in this court, being that the general rule requiring members of a fraternal beneficiary association to exhaust all remedies within the order before resorting to the courts has no application in cases where property rights are involved, or where the by-law under which the officers are purporting to act is unreasonable in its provisions, or for any other reason is void in law.

235 S.W.—61

The by-law thus referred to (section 119 of the laws of the Maccabees), reads as follows:

"Sec. 119. *Removal from Office.* The Great Commander may remove from office any tent officer within the jurisdiction of the Great Camp when it shall appear to his satisfaction that such officer is not performing his duties as required by the laws, the laws of the Great Camp and the by-laws of his tent. In such case no trial shall be necessary.

"No tent shall fill such vacancy by re-electing the officer so removed.

"The great Commander may immediately fill such vacancy by the appointment of a competent officer who shall hold such office until the next regular election of said tent.

"The Great Commander shall also have power at any time, either in person or by his representative or deputy authorized by him for that purpose, to audit the books and accounts of any tent officer, and it shall be the duty of any such officer to surrender immediately upon demand his books and accounts for such purpose."

There was further no claim made on behalf of the appellees either that the laws of the order did not provide for an appropriate and adequate appeal or that the procedure therein prescribed had not been properly adhered to by the Great Camp Officers in this instance, nor, under the uncontroverted proof made, could there have been. It was shown:

First, that all members on coming into the association bound themselves to abide by the laws of the order then in force and thereafter to be adopted; second, that section 438 of the laws provided:

"No suit at law or in equity shall be brought or maintained against the association upon any matter arising from the discipline of a member as provided in the laws of the association."

Third that the aggrieved local officers had the right of appeal from the action of the Great Commander (1) to the executive committee of the Great Camp for Texas, (2) to the Supreme Commander, and (3) to the board of trustees of the Supreme Tent, any and all of which appellate tribunals had full authority under the laws of the order to redress such grievances as they complained of.

Instead, however, of pursuing their appeal within the order, as already indicated, they chose rather to ask interference at the hands of a court of equity on the ground that one of them had a property right at stake, and that the quoted section 119, expressly empowering the Great Commander to do just what he did do, was unreasonable and void.

In these circumstances we do not think any right lay in them to hale their superior officers into the civil courts, but that they were in duty bound to prosecute the matter through the procedure provided for the purpose by and within their own organization.

It is not our understanding that in controversies of this character the mere involvement of a property right, or even the existence of a by-law the court might hold void in the absence of provision for an appeal within the association, justifies the application of judicial power; but that the internal remedies provided by the order must still be first exhausted.

[2] The rule of law governing the state of facts here presented was recently declared by this court in Fraser et al. v. Buck et al., 234 S. W. 679, by opinion filed June 16, 1921, as follows:

"The rule is thus stated in 5 Corpus Juris, p. 1364: 'The courts will not interfere with the internal affairs of an unincorporated association so as to settle disputes between the members, or questions of policy, discipline, or internal government, so long as the government of the society is fairly and honestly administered in conformity with its laws and with the law of the land, and no property or civil rights are invaded. Conversely, the proceedings of the association are subject to judicial review where there is fraud, oppression, or bad faith, or property or civil rights are invaded, or the proceedings in question are violative of the laws of the society, or the law of the land, or are illegal. Even in these cases, however, the courts will not take jurisdiction unless the complaining member has exhausted such remedies as may be provided by the laws of the association itself.' The authorities are practically unanimous in the support of this rule.

"The rights of all members of voluntary associations of this character must be settled in accordance with the rules and laws of the association which the members have adopted or to which they have agreed by becoming members, unless such rules or laws violate the laws of the land or are inadequate to protect the member in his property or personal rights, and resort cannot be had to the courts until the remedy provided by the laws of the association has been exhausted.

"If the laws of an association provide tribunals for settlement of questions which may arise between members affecting the rights of the members in their relation to the association and to each other as members of the association, such tribunals must be appealed to before the question or dispute can be taken into the courts. The wisdom and justice of this rule cannot, we think, be questioned, and the authorities in its support are almost innumerable. We cite the following as showing the application of the rule: Screwmen's Association v. Benson, 76 Tex. 552, 13 S. W. 379; Hickey v. Baine, 195 Mass. 446, 81 N. E. 201; Herman v. Plummer, 20 Wash. 363, 55 Pac. 315; Manning v. San Antonio Club, 63 Tex. 166, 51 Am. Rep. 639; Brown v. Harris County Med. Soc., 194 S. W. 1179; Gaines v. Farmer, 55 Tex. Civ. App. 601, 119 S. W. 874; O'Connor v. Morrin, 109 Misc. Rep. 379, 179 N. Y. Supp. 599."

Little need be added to that declaration, as it determines the precise question presented by this appeal. In the leading case there cited (Screwmen's Ass'n v. Benson, 76 Tex. 552, 555, 13 S. W. 379, 380), our Supreme Court, after declaring substantially the same principle of law as this court quoted from Corpus Juris, added this pronouncement:

"We think it matters not that the order of expulsion may have been contrary to law and void, and such as this court would not hesitate to annul in case there was no appeal within the association. The point is that it was the action of the tribunal created in accordance with the Constitution, and the appellee had an adequate remedy by appeal within the society itself. The doctrine is expressly announced and applied in the case of the German Church v. Commonwealth, 3 Barr. 282."

We do not desire to be understood as regarding the by-law herein quoted as either unreasonable or void, but simply as holding that, whether it was or was not so, the issue raised in this suit was not cognizable by a civil court until the whole gamut of procedure provided by the laws of the Maccabees had first been run. Since by the undisputed proof that was not done, the injunction granted below cannot stand; the judgment of the trial court awarding it has therefore been reversed, and this court's decree in all things dissolving it has been entered.

Reversed and rendered.